IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 00-cv-00808-LTB-PAC

BRIAN E. ROHRBOUGH, et al.,

    Plaintiffs,

v.

WAYNE F. HARRIS, et al.,

    Defendants.
_____

Civil Case No. 01-cv-02076-LTB-PAC

MARK ALLEN TAYLOR,

    Plaintiff,

v.

SOLVAY PHARMACEUTICALS, INC.,

    Defendant.
_____

ORDER
_____

These consolidated cases are before me on the following objections to the Magistrate Judge's September 23, 2003 Order (the "Disposition Order") [Doc 211] which addressed the disposition of materials contained in Room A540 of the Alfred A. Arraj United States Courthouse: (1) Plaintiff in Case No. 01-cv-02076 Mark Allen Taylor's ("Taylor") Motion Objecting to Magistrate's Evidence Room Order of September 23, 2003 [Doc # 351]; and (2) Plaintiffs in Case No. 00-cv-00808's Objection to Destruction of Evidence [Doc # 253]. I have

1

also considered the amicus briefs submitted by the National Archives and Records Administration ("NARA"), the Colorado Attorney General and the Columbine Records Review Task Force, and the Rocky Mountain News, as well as all other related pleadings, in reaching the conclusions set forth below.

## I. Background

These cases were brought by victims of the tragedy that occurred at Columbine High School on April 20, 1999. Specifically, on April 19, 2000, Plaintiffs commenced Civil Case No. 00-cv-00808 against the Harrises and the Klebolds, parents of the gunmen, and other defendants. Then, on October 19, 2001, Taylor and other victims and family members commenced Civil Case No. 01-cv-02076 against Defendant Solvay Pharmaceuticals, Inc. ("Solvay"), the manufacturer of a prescription drug that Plaintiffs alleged gunman Eric Harris was taking at the time of the tragedy and that Plaintiffs further alleged either caused or contributed to his conduct on that day.

A protective order was first entered in Case No. 01-cv-02076 on January 8, 2002. Following a hearing on February 19, 2002, a second protective order was entered in Case No. 01-cv-02076. These two protective orders were later consolidated into a single protective order dated March 22, 2002 (the "March 22, 2002 Consolidated Protective Order").

The protective orders entered in Case No. 01-cv-02076 provided for a repository at the federal courthouse for storage of materials covered by the terms of these orders. This repository is Room A540 of the Alfred A. Arraj United States Courthouse ("Room A540"). A Special Master was also appointed in Case No. 01-cv-02076 to monitor and maintain Room A540 in strict accordance with the terms of the protective orders.

The March 22, 2002 Consolidated Protective Order was modified once at the request of the parties by Order dated November 5, 2002. The parties did not otherwise object to the terms of this Order, and Case No. 01-cv-02076 was litigated strictly in accordance with its terms under the supervision of the Special Master, Magistrate Judge Coan, and United States District Court Judge Clarence A. Brimmer. Ultimately, however, all claims in Case No. 01-cv-02076 were settled, and the case was dismissed on February 6, 2003.

Shortly after the dismissal of Case No. 01-cv-02076, discovery commenced in Case No. 00-cv-00808. At that time, Room A540 was still being utilized in connection with Case No.01-cv-02076, and the parties in that case agreed to make the materials stored there available for use in Case No. 00-cv-00808. Access to the materials stored in Room A540 was governed by a new consolidated protective order entered in Case No. 00-cv-00808 on April 25, 2003 (the "April 25, 2003 Consolidated Protective Order").

The Special Master appointed in Case No. 01-cv-02076 continued to monitor and maintain Room A540 in connection with Case No. 00-cv-00808 for purposes of maintaining strict confidentiality of materials covered by the terms of the consolidated protective orders. To that end, on July 28, 2003, the Special Master issued a protocol (the "Deposition Protocol") for depositions to be taken in Case No. 00-cv-00808. The Deposition Protocol emphasized the confidentiality requirements of the April 25, 2003 Consolidated Protective Order and imposed numerous restrictions on access to deposition transcripts and other related materials.

The parties in Case No. 00-cv-00808 did not object to the terms of the April 25, 2003 Consolidated Protective Order or the Deposition Protocol. The case was litigated strictly in accordance with the terms of these documents under the supervision of the Special Master,

Magistrate Judge Coan, and myself. Additional materials, including additional deposition transcripts, were deposited in Room A540 as discovery proceeded in Case No. 00-00808. Ultimately, however, all of the claims in this case were settled, and Case No. 00-cv-00808 was dismissed on August 19, 2003.

Following settlement of Case No. 00-cv-00808, the Special Master began returning materials in Room A540 to the parties who had deposited them as provided by the protective orders. Magistrate Judge Coan then issued the Disposition Order with respect to the materials remaining in Room A540. Among other things, the Disposition Order provides that materials relating to depositions taken in Case No. 00-cv-00808 "will be disposed of by the Court" at a later date. *See* Disposition Order, pp. 8 - 11.

On October 24, 2003, the Special Master produced an inventory of all materials remaining in Room A540. This inventory identified the following: (1) Jefferson County School Records; (2) work product of Wheeler, Trigg & Kennedy, P.C. ("Wheeler Trigg"), counsel for Solvay; (3) 3-4 pages of documents from Jon Cram, M.D.; (4) the original deposition transcripts, reporter's notes, and computer disks for the depositions of Wayne and Katherine Harris (the "Harrises"), Robert Krieghauser, Dr. Cram, Peter Breggan, PhD, and Donald Marks, M.D. taken in Case No. 01-cv-02076; (5) records from the Jefferson County District Attorney relating to the gunmen's participation in a diversion program in 1998 and 1999; (6) the unsigned deposition transcripts, reporter's notes, and computer disks for the depositions of Judy Brown, Thomas and Susan Klebold (the "Klebolds"), and Wayne Harris taken in Case No. 00-cv-00808; (7) the untranscribed court reporter notes and computer disks from the deposition of Katherine Harris taken in Case No. 00-cv-00808; (8) various deposition exhibits; and (9) records and tally sheets

regarding copies of documents made by the parties in Case No. 00-cv-00808. Copies of depositions in Case No. 01-cv-02076 and materials in both cases may exist. Those materials remain subject to the protective orders entered in both cases.

As set forth above, several parties and interested non-parties filed objections and other pleadings relating to the Disposition Order. At that time, however, litigation involving rights to various materials related to the Columbine tragedy was pending in both Colorado state and federal courts. Because of the overlapping issues involved in these cases, I refrained from ruling on the objections to the Disposition Order until their conclusion. Then, following the conclusion of these related cases, I set this matter for a status and scheduling hearing that was held on January 26, 2007.

At the January 26, 2007 hearing, I confirmed that the dispute over the Disposition Order was limited to its provisions regarding the disposition of materials relating to the depositions taken of the Harrises and the Klebolds in Case No. 00-cv-00808. Specifically, the objections focus on their destruction. I then suggested that physical possession of all materials remaining in Room A540 could be transferred to NARA to be held under seal and subject to the protective orders for a period of 25 years and ordered all interested parties to submit position statements regarding this proposal. Without objection, I also ordered the destruction of all attorney work product of the lawyers of Wheeler Trigg. In compliance with these Orders, I have received confirmation that WheelerTrigg's attorney work product has been destroyed, as well as numerous position statements regarding the disposition of the materials remaining in Room A540. Resolution of the objections to the Disposition Order is therefore appropriate at this time.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(a), my review of the Disposition Order is limited to a determination of whether the challenged provisions are clearly erroneous or contrary to law.

## III. Analysis

### A. The Federal Records Act

Although it is somewhat unclear from the precise language used, the Disposition Order clearly contemplates the destruction of all materials relating to the depositions taken of the Harrises and the Klebolds in Case No. 00-cv-00808. *See* Disposition Order, pp. 10 & 11. The Federal Records Act (the "FRA"), 44 U.S.C. §§ 2101-2118, 2901-2910, 3101-3107, and 3301-3324, however, prohibits the destruction of federal records unless the destruction is done in accordance with the terms of the appropriate "records schedule." If the subject deposition materials constitute federal records, then the Disposition Order allowing for their destruction at a date to be determined by me is contrary to law and cannot stand. The first question for my determination then is whether these materials constitute federal records under the FRA.

> Under the FRA, the term "records" includes
>
> all books, papers, maps, photographs, machine readable materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them ....

44 U.S.C. § 3301. Agencies of the United States Government includes the United States District Courts. 44 U.S.C. § 2901(14).

The subject deposition materials are therefore records subject to the FRA if they (1) were received by the Court in connection with the transaction of public business and (2) were preserved or are appropriate for preservation by the Court because of the informational value of the data contained in these materials.

Further guidance for making these determinations is provided by the regulations that NARA has promulgated to give effect to the FRA. Specifically, these regulations define the term "received" to mean "the acceptance or collection of documentary materials by agency personnel in the course of their official duties ... regardless of how transmitted." 36 C.F.R. §1222.12(b)(4). Additionally, the regulations define the term "preserved" to mean "the filing, storage, or any other method of systematically maintaining documentary materials" and the term "appropriate for preservation" to mean "documentary materials ... received which in the judgment of the agency should be filed, stored, or systematically maintained ... even though the materials may not be covered by its current filing or maintenance procedures." 36 C.F.R. § 1222.12(b)(5) & (6).

Because of the extraordinary interest in these cases and the high degree of confidentiality that has been observed throughout their pendency, I read the signed and unsigned depositions of the Harrises and Klebolds to determine whether they constitute records under the FRA. Based on this review, the unique nature of these cases, and the broad interpretation given to the applicable terms of the FRA, I conclude that the materials relating to the depositions taken of the Harrises and Klebolds fall within the definition of records under the FRA. These materials were received and stored by the Court, and they are of significant historical value. By the same token, even though there are no specific objections regarding the other materials remaining in Room A540, I conclude that these materials are also records for purposes of the FRA. The destruction

7

of any of these materials as contemplated by the Disposition Order would therefore be contrary to the FRA, and the Disposition Order must be overruled to the extent that it provides for such destruction.

The next question then is what to do with the materials remaining in Room A540. With the exception of the Plaintiffs in Case No. 00-cv-00808, none of the interested parties oppose transferring physical custody of these materials to NARA, which is uniquely situated to assume the responsibility of maintaining these materials. Moreover, such transfer is entirely consistent with the terms of the April 25, 2003 Consolidated Protective Order which provides, in pertinent part, as follows:

> All such materials will be disposed of in accord with the terms of this Order at the conclusion of this case *or as further ordered by the Court.*
>
> ...
>
> At the conclusion of this litigation, all documents and materials deposited in [Room A540] pursuant to this Consolidated Protective Order shall be returned to the producing party, entity, or person, *or the appropriate custodian of any such documents and materials.*

*See* April 25, 2003 Consolidated Protective Order, ¶¶ 2 & 21 (emphasis added).

I therefore conclude that the appropriate disposition of the materials remaining in Room A540, is to transfer physical possession of them to NARA. The Court will, however, retain legal custody of these materials for a period of 20 years. By maintaining legal custody over these materials, the Court reserves the right to determine access to them. *See* 36 C.F.R. § 1256.4(a) (if the agency transferring the records imposes restrictions, NARA will honor such restrictions and refer any party seeking production of the documents back to the agency). This condition of transfer is critical because based on my reading of the depositions the significant concerns that led

8

to the issuance of the protective orders in these cases are unabated. These concerns include public safety which could be jeopardized if copycat incidents result from the release of detailed information regarding the events of April 20, 1999; the privacy interests of the parties in these consolidated cases and non-parties who are referenced in the subject materials; and abiding by the expectations of the parties who acted in reliance on the protective orders throughout the course of litigation.

In concluding that it remains necessary and appropriate to restrict access to the subject materials , I am mindful that there is a legitimate public interest in these materials so that similar tragedies may hopefully be prevented in the future. I conclude, however, that the balance of interests still strikes in favor of maintaining strict confidentiality. This conclusion is consistent with the fact that pretrial depositions have not traditionally been recognized as a public course of information. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33 (1984). Accordingly, physical custody of the subject materials will be transferred to NARA under seal and subject to the ongoing protective orders that have been issued in these cases. At the end of 20 years, legal custody of the subject materials will also be transferred to NARA and the seal shall expire at that time.

NARA has taken the position that any materials determined to be federal records in this case are of historic value and should therefore be treated as permanent records of the United States. I agree that the historic value of these materials warrants their permanent retention. The subject materials shall therefore be preserved even after legal custody has transferred to NARA and the seal has been removed. *See* Administrative Office of the United States Courts, *Guide to Judiciary Policies & Procedures,* Vol. 13, Ch. 17, § 15(A)(7)(b)(3) (civil case files which NARA

9

has determined, in consultation with the Court, to have historical value shall be permanently preserved).

The interested parties have raised a few other issues regarding the subject materials that warrant further comment. First, both the Klebolds and the Jefferson County Sheriff have proposed redaction of the subject materials to ensure consistency with the decisions of the Colorado state courts addressing the release of information related to the Columbine tragedy. These state court decisions were, however, largely driven by the Colorado Open Records Act, 24 Colo. Rev. Stat. § 24-72-201, *et seq.*, which does not control in these cases. In addition, maintaining these records under seal for a period of 20 years addresses significant extant privacy concerns. The Klebolds have further proposed redaction consistent with the Federal Rules of Evidence. This proposal is, however, not feasible. Based on these considerations then, I decline to order any redaction to the subject materials prior to their transfer to NARA.

Next, the Colorado Attorney General and Taylor have requested that the subject materials be made available to Dr. Delbert S. Elliott, Ph.D., the Director of the University of Colorado's Center for the Study and Prevention of Violence, and two of his research assistants. Regardless of Dr. Delbert's impressive credentials, granting this request would violate the terms of the consolidated protective orders that will remain in full force and effect in these cases for the reasons set forth above. I therefore likewise decline to grant Dr. Elliott and his staff access to the materials being transferred to NARA.

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Plaintiff in Case No. 01-cv-02076 Mark Allen Taylor's ("Taylor") Motion Objecting to Magistrate's Evidence Room Order of September 23, 2003 [Doc # 351] and Plaintiffs in Case

No. 00-cv-00808's Objection to Destruction of Evidence [Doc # 253] are GRANTED and the Disposition Order [Doc # 211] is REVERSED insofar as it provides for the destruction of any materials remaining in Room A540; .

2. All materials remaining in Room A540 constitute records under the FRA;

3. Physical custody of these records shall be transferred by the Special Master to the Clerk of this Court for transfer to NARA to be held under seal for a period of 20 years from the date of transfer, during which time the Court shall retain legal custody of these materials;

4. Absent further order of the Court, the seal on public access to these records shall remain complete and without qualification;

5. The seal on these records shall be lifted and legal custody over them shall transfer to NARA to be maintained as permanent records 20 years from the date of the transfer of physical custody to NARA;

6. Until the seal on these records is lifted, all requests for access to them shall be forwarded to the Court in accordance with 36 C.F.R. § 1256.4, which provides for issues of access to be determinated by this originating agency;

7. The March 22, 2002 Consolidated Protective Order entered in Case No. 01-cv-02076 and the April 25, 2003 Consolidated Protective Order entered in Case No. 00-cv-00808 shall remain in full force and effect; and

8. Once all materials remaining therein have been removed from Room A540 in accordance with the terms of this Order, Room A540 of the Alfred A. Arraj United States Courthouse shall be permanently closed as a repository for materials relating to these consolidated cases and the Special Master discharged.

Dated: April __2__, 2007 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE